## B. F. RAY
### *v.*
## W. J. FAULKNER, for use, etc.

1. GARNISHMENT — *acceptance of order by debtor before service.* The acceptance by a debtor of an order drawn upon him by his creditor, in good faith, before the service of a garnishee process upon him, makes him no longer the debtor of the drawer, and hence not liable to be garnisheed by his creditors.

2. ACCEPTANCE—*whether absolute or conditional.* An acceptance was in these words: "accepted for the full amount, provided there is this amount in my hands:" *Held,* this was an absolute undertaking to pay the holder

all the money the acceptor had of the drawer, not exceeding the amount of the order.

3. JUDGMENT—*will be reversed where there is no evidence to sustain it.* Where the evidence is conflicting, this court is not disposed to reverse a judgment, but where there is an entire want of evidence to sustain it, it will be reversed.

APPEAL from the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

Messrs. KNOWLTON & HUMPHREYVILLE, for the appellant.

Mr. S. M. DAVIS, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This is an appeal from a judgment rendered in the circuit court of Cook county, in favor of W. J. Faulkner against Adam Smith, for the sum of $1347.53, a portion of which was for the use and benefit of Wm. McGregor, and the remainder for B. F. Ray.

The main point relied upon to reverse the judgment is, that the evidence before the court was not sufficient to justify the judgment.

It appears, from the record. that on the 20th day of February, 1873, McGregor recovered a judgment against Faulkner for $803.50, upon which execution was issued, and returned no property found. On the 3d day of April, 1873, garnishee process was issued and served upon Adam Smith, and the question before the court was, whether Smith, at the time of the service of the garnishee process upon him, was indebted to Faulkner.

On the 24th day of April McGregor filed interrogatories, to be answered by the garnishee. Smith, in his answer, says, about the 1st of February, 1873, he had for collection a mortgage, in which Faulkner had an interest; that, on the last of March or 1st of April, 1873, he received $1931.50 on the mortgage, which belonged to Faulkner; that in February, previous, he had paid Faulkner $50; on the 13th of February he accepted an order drawn by Faulkner, in favor of the Scoville Manufacturing Co., for $533.97; that on the 1st of April, and before

the garnishee process was served, he accepted, in writing, an order drawn on him by Faulkner, in favor of appellant, B. F. Ray, for the sum of $1381.50, which, together with the other order and the $50 paid, amount to more than he received on the mortgage or otherwise belonging to Faulkner.

To this answer a replication was filed, in which it is charged that Adam Smith has not answered truly; that the two orders were fraudulently accepted; that Faulkner was not indebted to Ray.

It is conceded that the order given to the Scoville Manufacturing Company was made and accepted in good faith, but the order given to Ray, it is claimed, was fraudulent.

We have carefully considered the evidence, as shown by the record, and we fail to find testimony which will impeach the legality or honesty of the order given to Ray. The order bears date March 31, 1873. It was accepted April 1st, three days before the garnishee process was served. Ray, in his evidence, testifies, that when Faulkner gave him the order on Smith, Faulkner was indebted to him between three and four hundred dollars; that he paid Faulkner $50 on the day the order was given, and in a day or two $500, and in a short time thereafter $450 more. This was all done without any knowledge of the garnishee proceedings.

It is true that there is a slight discrepancy between the answer filed by Ray and his evidence given on the stand, but this was not sufficient to impeach the honesty of the transaction between him and Faulkner.

Appellee called James Dunne as a witness, to show a want of consideration for the order. On his direct examination he testified, he had repeated conversations with Ray about his matters and about Faulkner's business; he never heard him say anything about any claim against Faulkner, or that he had paid him $1000. But, upon cross-examination, he says he don't know anything about the dealings between Faulkner and Ray; don't know whether Faulkner was indebted to Ray or whether Ray paid Faulkner money or not.

This evidence could certainly have no bearing or weight

with a court or jury. The substance of the evidence of this witness was, he knew nothing about the business between the two men.

The only other evidence before the court was the testimony of Adam Smith, which was, substantially, like his answer.

It is, however, insisted, that the acceptance of the order by Smith was not absolute, but conditional, and there was no liability on the part of Smith to pay the order. The acceptance was in these words: "Accepted for the full amount, provided there is this amount in my hands. Adam Smith."

An acceptance is defined to be the act by which the drawee evinces his consent to comply with and be bound by the request contained in the bill of exchange directed to him. Chitty on Bills, 307.

The only reasonable construction to be placed upon the contract of acceptance signed by Smith is, he was bound to pay the full amount of the order, if he had in his hands that much money belonging to Faulkner. If he did not have the full amount named in the order, then he was bound to pay to the extent that he had money belonging to Faulkner. In other words, it was an absolute undertaking to pay B. F. Ray all the money he held of Faulkner, not exceeding the amount of the order.

When Smith signed the acceptance, written upon the order, he was no longer the debtor of Faulkner, but, by the execution of the written acceptance, he at once became the debtor of Ray, and when the garnishee process was served upon him on the 3d day of April, he was not indebted to Faulkner, and was not liable to be garnisheed.

Were the evidence in this case conflicting or contradictory in regard to the good faith of the transaction, we would not feel disposed to reverse the judgment of the court, but in the view we take of the facts, as they are disclosed by the record, there seems to be an entire want of evidence to sustain the judgment. It will, therefore, be reversed, and the cause remanded.

*Judgment reversed.*